May it please the court, my name is John Wu, and if I may reserve two minutes for rebuttal. I'm here today for the petitioner Mirella Lutz Villanueva. Villanueva, okay. Villanueva, who at 13 years of age immigrated in 1986 to the United States with her parents and a younger brother. After she immigrated, very shortly after, she then went back to the Philippine Islands for schooling because her parents wanted her to do that. In 2004, seven years ago, she came back to the United States. Here in the interim, she did come back to the United States, but for a very short period of time. And that is probably why, even though when she landed, she had a valid green card and a re-entry permit, the Department of Homeland Security put her into initiated proceedings to remove her. It is, as I understand the dateline, the only time she's been in the United States since they originally came in 86, and then returned to the Philippines one month later, was a three-month vacation in 87? That's correct, Your Honor. And that's probably why the inspectors got all excited and initiated proceedings under INA 212A7, big A, small I, big I, which basically requires that all returning residents have a valid, unexpired immigrant visa or a re-entry permit. Now, to prevail on that charge, the agency must prove by clear, unequivocal, and convincing evidence that the immigrant intended to abandon her permanent residence status. That's a very significant and heavy burden, I submit. But it is a fact-specific standard, correct? That's very true, Your Honor. And once the BIA determines what they think is the bottom line, then we cannot overturn their decision except if there is no substantial evidence to sustain it. Isn't that correct? That's correct, Your Honor. And the BIA did, in making its concessions on its finding, ruled that or determined that the burden of the service, the agency, must be, the burden of proof must be by clear, convincing, unequivocal evidence. Now, the actions of Ms. Villanueva weighs against the notion that she abandoned her residence status. What does she really need to do? Given that she wasn't gone a very short time, she was gone a long time, it's my understanding that what we're really looking for is if she has a continuous, uninterrupted intention to return during the entirety of her visit. That's correct, Your Honor. The authority of this Court to review the decision of the Board is limited to the actual grounds relied upon by the Board, which in this case is the critical period is two years and four months from 1999 when she made the decision or, excuse me, when she tried to carry out a decision to come back. In other words, the period preceding 1999, when the mourning period from the death of her grandmother ended, she quit her job. That's a very significant aspect. She quit her job because they had the plan to come back, and that's on page 147 of the record. And the reason we're only doing the last years is really because the BIA gave her a break, right? It found that, okay. And said that her parents and their actions were not important in this particular case. They were going to just waive that part that they could have responsibly have gone with, but instead said we're just going to go on her conduct after she was of age. Correct. And that's why they honed in on the two years and four months starting 1999. And within that period of time, they broke it down into two separate periods. The period between the time that she was supposed to have left pursuant to the family plan in 1999 and 2000, when she did go to the airport after she quit her job, after she told her mother, there's been no conversation, I've got to go. So she goes to the airport. Let me stop you one more time. And it's my understanding that when we're looking at these facts, which you now want to give us, that we're really looking at an intent to return to the United States in a relatively short period of time. That's correct, Your Honor. And we can't just have an intent to return some time. We've got to have an intent to return in a relatively short period of time. That's correct, Your Honor. However, for the last 30 years, the case law in this circuit has also decided that if a relatively short period of time does not occur, regardless if the intention to come back is uninterrupted. And the last case that was decided in 2003, could a hooligan tell that because the respondent could not come back, he was stopped, there was a tax problem in his home native country, just like here, she could not get on the airplane because the reentry permit. So that was one period. And in that period, the notion weighs against the finding of abandonment because she continued manifesting her intention to come back. I submit, Your Honor, for abandonment to occur, for unequivocal evidence to occur, to be found, we need to find some evidence. Well, we're really not reviewing this for unequivocal evidence. We're only reviewing it to see if there's substantial evidence that the BIA's decision is correct. Well, with regard to the second period, Your Honor, the BIA found that because she went to a lawyer after she got the documents, then she waited too long. I think that's flat out wrong. That's an error of law to decide that a person who goes to get the documents before she hires a lawyer is manifesting her intention to abandon, particularly when she went to the officials and asked them, what's a reentry permit all about? She had absolutely no notice of such abandonment concept. And they told her, you've got to get the documents to show that you've got to go to school, that your grandmother was sick for 10 years, her kidney was out of whack, only 10% was operating. So she ran around to get to the hospital. She had to go to more than one hospital. One of the hospitals kept the records in a garage. She had to go in there and dig her. So it was impossible for her to have gone. I very much appreciate what you're suggesting, because you're putting all the facts forward that would protect your client or help your client. And I guess that's what I do in front of the jury. Now, once the jury has decided, which is somewhat similar to this case, then I have to say, is there substantial evidence to support the opposite? I might even agree with you. But my look at this is not that. My look is to say, is there substantial evidence to support the opposite? And I guess my worry is this. Your client waited for a year after a mourning to attempt to return to the United States. Her testimony is she was negotiating with her family for all of them to come. But I didn't know whether the testimony really got to that. Certainly she was waiting for her family. There's no discussion. That's why she advised her mother of that or my intention to get back there. I guess I'm worried that, given what she said, that there might be substantial evidence to sustain what the IJ did. I can appreciate the Court's concern, Your Honor, but the lapse of time has never been dispositive. In this case, there might be the long period of time might be substantial evidence, but it's not unequivocal, Your Honor. If there's not unequivocal evidence, that can't be clear. I've got to stop, Your Honor, and if I may come back. Okay. That's fine. Good morning. May it please the Court, my name is Amy Fredrickson, and I'm representing the government. You may want to speak up, Amy, or Ms. Fredrickson, whichever you want me to call you, only because Judge Fletcher really needs you to be able to hear you, and I know yesterday when people didn't speak up, she couldn't hear. All right. I can do that. In this case, substantial evidence supports the Board's finding that the petitioner abandoned her LPR status, where she was present in the United States a total of four months between 1986 and 2004, never attended school, had a job, owned property, or paid taxes in the United States, and failed to return to the United States for over four years after her obligations in the Philippines ended. Additionally, she waited over a year before contacting a lawyer after receiving actual notice that her status could be in jeopardy. This is a fact-specific inquiry, and the facts in this case support the Board's conclusion that the petitioner, in fact, abandoned her lawful permanent residency. Counsel, it seems that her family opposed her returning to the United States and that she had a lot of attempts to negotiate with her family. What possible interest does the government have in preventing her from becoming a lawful permanent resident of the United States? Well, as the Board pointed out, the primary concern here is with the two years that passed between the time her obligations ended and the time that she contacted an attorney. The first period of time is after the period of mourning ended for her grandmother's death and the time that she, a year passed before she went to the airport to try to actually get on a plane. And at that point, she was informed that her status was in jeopardy because she'd been away from the United States for so long that she would need to get a reentry permit and take further steps. And between that time, over a year passed before she contacted an attorney. Now, that period of time is particularly relevant in this case because at that point, she had actual notice that there was a problem and the fact that she had actually bought a plane ticket indicates the fact that her family was allowing her to return to the United States, regardless of whatever had transpired in the past. Now, in that year, because this is a fact-specific inquiry, that year is particularly relevant. And in other cases, this Court has concluded that that period of time is not a short period of time. In seeing the Reno, the Court noted that eight- to nine-month periods were not temporary visits. And in this case, this was 13 months between the time that she made an attempt to enter the United States and contacted an attorney about continuing that process. Counsel, my question to you is, what interest does the government have in preventing a person from returning? There's no criminal record, nothing that would suggest that she wouldn't be a lawful permanent resident. That was the question. I understand all of the evidence. I understand that fully and what the BIA decided. But my question is, what possible interest does the government have in preventing such a person from returning to the United States? Well, I think that there's a couple of concerns. One of them has to do with the purpose of lawful permanent residency and the fact that the purpose of permanent residency is to permit someone to come here, legally remain in the United States for an indefinite period of time, work, pay taxes, and be participants in the U.S. And it's a limited number of people are permitted to become lawful permanent residents during a given time period. And where a person is not exercising that privilege, then the government does have an interest in keeping those persons from being able to freely enter and exit the United States. Does that better answer your question, Your Honor? I understand your answer. Let me ask you to talk about, in effect, the agency revoked the LPR status in this particular matter without even, if you will, the alien even knowing or even having constructive notice of the law's requirements. Doesn't that violate due process? Okay, so there's a few things. First of all, there is some notice contained in the form of the statute stating that if you are considered a returning resident, only if you're returning from a temporary trip abroad. And the regulations require that if you are going to be outside the United States for over a year, you obtain a reentry permit prior to exiting the United States. Reentry permits expire if you're outside the United States for more than two years. So the regulations on their face have a number of things that point to the fact that just because you're a lawful permanent resident doesn't mean that you can remain outside the United States indefinitely and be expected to be able to reenter the United States. Additionally, the law at the time that she exited the United States was already clear that you could abandon your lawful permanent residency. But most importantly in this case, the petitioner stated that she had actual notice as of 2000 when she attempted to board the plane that her status was in jeopardy. And this is four years before she actually manages to attempt to reenter the United States and over a year before she contacts an attorney seeking to help her obtain the reentry permit. And that notice was probably given pursuant to Government Regulation 8 CFR 211.1A? Probably. I mean, that's the one that would say each arriving alien applying for admission, whether boarding an aircraft or whatever, has to do that. Yes. So, I mean, in this case, the combination of the state of the law, the regulations, and the fact that she received actual notice all support the Board's conclusion that there wasn't a due process violation. Additionally, she hasn't presented any evidence that even if she had known, that she would have done anything differently. And it's her actions and her intent that are the problem in this case. So she can't demonstrate prejudice because she hasn't demonstrated that anything would have been different whether she had that notice or not. Because, in fact, when she had the actual notice, she still failed to even seek the help of an attorney for over a year. Does she document a suggestion by the government that before she sees the lawyer, she should get all this information together? Who told her to do that? We don't know. She went to the U.S. Consulate Office, and they told her that she needed to seek the help of an attorney. And she did not do that. So she took it upon herself to defer that until she got all these records together. Right. But, again, the board determined that her failure to seek the help of an attorney and to get that process going sooner indicates that she did not have the desire to return to the United States as soon as possible to take up her permanent residency, which is the intent that's required. In this case, because of the long absence of the petitioner from the United States, she has virtually no ties with the United States. She's had two vacations here lasting four months, and those were now over 20 years ago. And the fact that, in the interim, she went to school, held a full-time job in the Philippines, and delayed her return to the United States for two years after the time that all of her obligations in the Philippines ended substantial evidence supports the board's conclusion that she abandoned her lawful permanent residency. Thank you, ma'am. Thank you. The BIA was concerned with the fact that she went to a lawyer after she gathered documents. That's what she was told to do by the officials at the embassy. On page 126, you'll have the record. She was asked, what took you so long to go from the U.S. government officers to a lawyer's office? And she answered, because the U.S. government told me I need to have a document to prove that I'm a lawyer. Now, before I go to a lawyer, Your Honor, we can't fault her for gathering documents before she goes to a lawyer. Regarding notice, Your Honor, putting aside the fact that she was only 13 when she immigrated, she had no notion of abandonment. Nobody told her, not in the statutes, not in the regulations, do we have any definition of abandonment, which we know has got to be, should be, an express intention, express manifestation of some action that she took to abandon. There was no such evidence, Your Honor. In this case, I'd like the Court to take a look at Kodakulian, decided by this Court in 2003. The respondent in that case was here for three months, and she, he, excuse me, and he left. Same thing here. And in the case in the first, excuse me, the Second Circuit, decided in 2007, relying heavily on our case law in the Ninth Circuit, where the person in that case in four years was in the United States for four months or three, excuse me, two months before she left after she immigrated and another month after she came back. And the Court in that case said we cannot view the situation in a vacuum with a blind eye towards the situation of family. She was 13. What ties, what business, what property is she going to have? It's not possible, Your Honor. Thank you. Thank you very much for your argument. Case 0870641, Villanueva v. Holder is hereby submitted.
judges: Brewster, Fletcher B. , Smith N. R.